**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : **CRIMINAL ACTION** |
| | : |
| **v.** | : **NO. 14-652-17** |
| | : |
| **FRANK CHRISTIAN PERALTA** | : |

## ORDER-MEMORANDUM

**AND NOW**, this 30th day of June 2026, upon considering Defendant's two Motions to terminate his supervised release (ECFs 1517, 1522) and the United States' Motion to dismiss (ECF 1523), it is **ORDERED** we:

1.      **DENY** Defendant's Motions to terminate his supervised release (ECFs 1517, 1522) without prejudice; and,

2.      **DENY** the United States' Motion (ECF 1523) as moot.

### *Analysis*

Our Grand Jury charged Frank Christian Peralta with conspiracy arising from his role in a large, multi-Defendant, Philadelphia based drug trafficking organization. Two of his co-conspirators chose to proceed to trial and the jury found them guilty. Mr. Peralta chose to negotiate a plea agreement which allowed us to consider a lower range of incarceration under the Sentencing Guidelines. Mr. Peralta agreed: "In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law."[1]

We sentenced Mr. Peralta to eighty-four months' imprisonment and a ten–year term of supervised release on July 13, 2016 after he pleaded guilty to conspiracy to distribute and

conspiracy to import one kilogram or more of heroin. Mr. Peralta completed his term of imprisonment on October 20, 2020 and began serving his ten-year term of supervised release. He has served sixty-seven months of his 120-month term of supervised release.

Mr. Peralta now asks us to amend our sentence from almost ten years ago and end his supervised release so he can travel to the Dominican Republic to visit his ill mother and get married.[2] The United States opposes Mr. Peralta's motion and seeks to dismiss it.[3] It argues Mr. Peralta waived his right to seek early termination of supervised release in the plea agreement, relying on our Court of Appeals' 2019 guidance in *United States v. Damon*.[4] Mr. Peralta argues *Damon* does not apply and his motion seeking early termination of supervised release is not barred by his plea waiver.

We conclude *Damon* is distinguishable. We join our colleagues in finding Mr. Peralta's negotiated plea language (as opposed to the broader waiver reviewed in *Damon*) does not bar Mr. Peralta's motion for early termination of supervised release. But we deny his motion finding early termination of supervised release is not warranted at this time.

### Mr. Peralta did not waive the ability to move for early termination of supervised release.

The United States relies on our Court of Appeals' 2019 analysis in *Damon* to argue Mr. Peralta knowingly and voluntarily agreed to waive his right to move for early termination of supervised release.

Our Court of Appeals in *Damon* addressed whether a plea agreement barred a motion to terminate his ten-year term of supervised release after serving a little over fifty percent of the term. Mr. Damon confirmed he knew: "he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including

2

but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33."[5]

Judge Wolfson found the waiver provision in the plea agreement barred Mr. Damon's motion. Mr. Damon appealed, arguing the language of the waiver did not extend to his motion for termination of supervised release.[6] Our Court of Appeals disagreed with Mr. Damon, concluding the term "sentence" in the waiver provision—"any appeal … which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33"—included the term of Mr. Damon's supervised release.[7] Our Court of Appeals held Mr. Damon waived the right to file any motion or appeal "challeng[ing] the sentence imposed" which included the term of supervised release and held Mr. Damon bound by the bargained-for terms of the plea agreement and waiver.[8]

The waiver language in *Damon* differs from the waiver language in Mr. Peralta's plea agreement. Mr. Peralta's waiver language is narrower than the waiver language presented to Judge Wolfson and our Court of Appeals in *Damon*. [9] We are guided by the analysis of the language in Mr. Peralta's agreement reviewed by Judge Perez and Judge Savage. Both found the identical language distinguishable from the agreement in *Damon*.

Judge Perez earlier this month found a waiver with language identical to Mr. Peralta's waiver narrower than the waiver in *Damon*.[10] Recognizing the split within our District on whether *Damon* bars motions for early termination of supervised release with waivers like Mr. Mogilyansky's (and identical to Mr. Peralta's waiver), Judge Perez concluded the plea agreement waived the right to appeal or collaterally attack the conviction, sentence, or any other matter relating to the prosecution of the offense, but did *not* expressly bar Mr. Mogilyansky from filing

"any other writ or motion" or a motion "challeng[ing] the sentence imposed."[11]

Having found *Damon* did not preclude Mr. Mogilyansky's motion for early termination of supervised release, Judge Perez turned to whether such a motion is a "collateral attack" on his sentence. Judge Perez found the motion is neither an appeal nor a collateral attack on Mr. Mogilyansky's sentence and the language of the waiver and plea colloquy suggested Mr. Mogilyansky could not have knowingly or voluntarily waived his right to move for early termination of supervised release.[12] Judge Perez reasoned the language in the agreement—"any other provision of law"—follows the terms "appeal" and "collateral attack" and identified statutes, and a defendant "would likely not understand" the words "any other provision of law" to include anything other than an appeal or collateral attack on a sentence.[13]

Judge Perez also found persuasive the plea colloquy conducted by Judge McLaughlin at the time of Mr. Mogilyansky's plea hearing. Judge McLaughlin addressed the waiver of appellate rights as the right to "appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, except under certain very narrow circumstances" delineated for Mr. Mogilyansky.[14] Judge Perez concluded the colloquy established Mr. Mogilyansky waived his right to appeal and collateral attack to his sentence but not his right to move to terminate his term of supervised release.[15]

Judge Savage also found the identical waiver language considered by Judge Perez and used in Mr. Peralta's plea agreement barred only appeals and collateral attacks, and not a motion to terminate supervised release.[16] Judge Savage found the waiver language distinguishable from *Damon* and the plea colloquy did not show Mr. DeLeon-Medina understood and willingly waived his right to move for early termination of supervised release.[17]

We agree with Judge Savage and Judge Perez as well as our other colleagues.[18] We

4

conclude Mr. Peralta's plea agreement did not bar today's motion for early termination of supervised release. He waived all rights to appeal or collaterally attack his conviction, sentence, or any other matter relating to this prosecution.[19] He did not agree (unlike Mr. Damon) to waive the right to move for relief as to any aspect of his sentence. The United States and Mr. Peralta chose different language which does not address motions to terminate supervised release. Mr. Peralta is not collaterally attacking his supervised release term. He is not appealing his supervised release term. He did not waive the right to move for relief challenging the supervised release part of his sentence.

We decline to add specific language to the negotiated plea agreement. Mr. Peralta may move for early termination of supervised release without breaching the chosen language in the plea agreement.

### *We deny early termination after considering the section 2553(a) factors.*

But finding Mr. Peralta did not waive his ability to move to reduce his supervised release term does not mean we automatically amend our sentence and reduce the considered term of supervised release. Congress through section 3583(e) allows us to terminate a term of supervised release after considering the factors in section 3553(a).[20] We must consider the following factors: "(1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6)

5

the need to provide restitution to any victims of the offense."[21]

After considering the section 3553(a) factors, we may grant Mr. Peralta relief only if we are satisfied early termination is warranted by his conduct and is in the interest of justice.[22] We have discretion in considering whether early termination of supervised release is appropriate.[23] We are not required to make specific findings of fact as to each factor; a "statement [we] considered the statutory factors is sufficient."[24]

The United States Sentencing Commission recommends when determining whether to terminate a remaining term of supervised release, we "may wish to consider such factors as: (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant."[25]

Mr. Peralta describes his rehabilitation, stability, and reintegration into society.[26] To date, he complied with all conditions of supervised release, satisfied all financial obligations we imposed, maintained stable employment for over three-and-a-half years, began a trucking business, volunteers in community services including charitable softball events, became a father

6

and is engaged to be married.[27] He seeks early termination to allow him to "travel and fully support his family and employment obligations."[28]

We commend Mr. Peralta for his work toward building a lawful and productive life post-incarceration. But we must consider all section 3553(a) factors.

The first three factors counsel against early termination of supervised release. Mr. Peralta pleaded guilty to conspiracy to distribute multi-kilogram quantities of heroin in the Philadelphia area as part of his admitted involvement with a large drug trafficking organization for two years. Mr. Peralta's crimes carried a mandatory minimum sentence of twenty years' imprisonment and a mandatory minimum term of supervised release of ten years. We sentenced Mr. Peralta to a term of eighty-four months (seven years) imprisonment and a ten-year term of supervised release. We must consider adequate deterrence to criminal conduct. The charges to which Mr. Peralta pleaded guilty are very serious. We cannot overstate the seriousness of drug crimes and the effect of drugs on society. The seriousness of Mr. Peralta's offenses, the sentencing range established for his offenses, and the need for adequate deterrence weighs against early termination of supervised release.

We must also consider pertinent policy statements issued by the United States Sentencing Commission. The Commission's policy statement focuses on Mr. Peralta's behavior including court-reported violations of his term of supervised release, his ability to lawfully self-manage, his "substantial compliance" with all conditions of supervision, and engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision.[29]

Mr. Peralta's probation officer reports Mr. Peralta is "in full compliance with his supervision conditions."[30] But, as Mr. Peralta concedes, his probation officer opposes early

termination of supervised release based on the "Guidelines manual individualized assessment part (v) and part (vi)."[31] Mr. Peralta does not address the basis of his probation officer's opposition and concerns.

Mr. Peralta has served sixty-seven months of his 120-month term of supervised release, nearly fifty-six percent of his term. After considering the section 3553(a) factors, we conclude early termination of Mr. Peralta's supervised release is not warranted at this time based on the amount of supervised release time he has served, the seriousness of his offenses, and the interest of justice.

We deny Mr. Peralta's motions for early termination of supervised release.

_____
KEARNEY, J.

---

[1] ECF 1523 at 22, ¶ 9 (referring to the pagination assigned by the CM/ECF docketing system).

[2] ECF 1517, 1522. Mr. Peralta moved for early termination of supervised release under 18 U.S.C. § 3583(e)(1).

[3] ECF 1523.

[4] 933 F.3d 269 (3d Cir. 2019).

[5] *Damon*, 933 F.3d at 271.

[6] *Id.* at 272.

[7] *Id.*

[8] *Id.* at 273–75.

[9] The contract language in the negotiated plea governs. We compare the waiver language:

| Mr. Peralta | Mr. Damon |
|---|---|
| "In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." | "Ronald Damon knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33." |

[10] *United States v. Mogilyansky*, No. 08-711, 2026 WL 1707157, at *4–6 (E.D. Pa. June 12, 2026).

[11] *Id.* at *5.

[12] *Id.* at *7.

[13] *Id.*

[14] *Id.* (citing plea colloquy).

[15] *Id.*

[16] *United States v. DeLeon-Medina*, No. 15-554, 2025 WL 3090762 (E.D. Pa. Nov. 5, 2025).

[17] *Id.* at *2 (collecting cases).

[18] *Id.*

[19] We advised Mr. Peralta in our plea colloquy the plea agreement limited his right to an appeal and he agreed to the waiver of rights identified in paragraph 9 of the plea agreement. ECF 1523 at 40, 41, 47 (referring to the pagination assigned by the CM/ECF docketing system). We, like Judge Perez, conclude our plea colloquy does not show Mr. Peralta knowingly waiver the right to seek early termination of supervised release.

[20] 18 U.S.C. §§ 3553(a), 3583(e). Section 3583(e)(1) provides: "The court may, after considering the factors set forth in [section 3553] … terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the

interest of justice." 18 U.S.C. § 3583(e)(1).

[21]  *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (citations omitted).

[22]  *Melvin*, 978 F.3d at 52 (quoting 28 U.S.C. § 3583(e)(1)).

[23]  *Id.* (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

[24]  *Id.* at 52–53 (quoting *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003)).

[25]  USSG, § 5D1.4, Application Note 1(B).

[26]  ECF 1517 at 2.

[27]  *Id.* at 2–3.

[28]  *Id.* at 3. Mr. Peralta would like to return to the Dominican Republic to marry and spend time with his mother who is ill. ECF 1522.

[29]  Neither Mr. Peralta nor the United States address the fifth and sixth factors of section 3553(a): "(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(5), (6).

[30]  ECF 1522 at 3, ¶ 6.

[31]  *Id.* at 2, ¶ 5. It is unclear what Mr. Peralta's probation officer refers to here and Mr. Peralta's counsel did not elaborate. We assume this is a reference to the Commission's Application Note regarding the factors we may consider at USSG, § 5D1.4, Application Note 1(B): "(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant."